## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

BRON B.,                                          )
                                                 )
            **Plaintiff,**                     )
                                                 )
v.                                               )          **Case No. CIV-24-1046-R**
                                                 )
**FRANK BISIGNANO,**[1]                          )
**Commissioner,**                                )
**Social Security Administration,**              )
                                                 )
            **Defendant.**                    )

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff Bron B. seeks judicial review of the denial by the Social Security Administration ("SSA") of his application for supplemental security income. United States District Judge David L. Russell referred this matter to the undersigned Magistrate Judge for proposed findings and recommendations consistent with 28 U.S.C. §§ 636(b)(1)(B) and 636(b)(3), and Federal Rule of Civil Procedure 72(b). The Commissioner has filed the administrative record ("AR"), Doc. 6, and both parties have briefed their positions, Docs. 9, 17, 18.[2] For the following reasons, the undersigned recommends that the Court reverse and remand the Commissioner's decision for further administrative proceedings.

---

[1] Frank Bisignano is substituted as the proper party defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] Citations to the parties' briefs reference the Court's ECF pagination. Citations to the AR reference the document's original pagination.

## I.     <u>Procedural Background</u>

Initially and on reconsideration, the SSA denied Plaintiff's application for benefits. On September 20, 2022, an administrative law judge ("ALJ") issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  AR 17-23.  The Appeals Council denied Plaintiff's request for review.  AR 1-6.  Thereafter, Plaintiff appealed to this Court, which reversed the Commissioner's decision and remanded for further administrative proceedings.  AR 641-42.  Pursuant to that order, the Appeals Council remanded the case to a different ALJ for further proceedings and a new decision. AR 644-50.

On August 2, 2024, a second ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  AR 578-97.  As Plaintiff did not file exceptions to the hearing decision, the Appeals Council did not assume jurisdiction and the ALJ's decision became the Commissioner's final decision.  *See* 20 C.F.R. § 416.1484(d).

## II.     <u>The ALJ's Decision</u>

The ALJ followed the five-step sequential evaluation process required by agency regulations.  *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (explaining the five-step process); *see also* 20 C.F.R. § 416.920 (same).  The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the application date.  AR 581.  At step two, the ALJ determined that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, to include osteomyelitis, discitis, and Pott disease.  *Id.*  At step

three, the ALJ found Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. *Id.*

At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at the light exertional level, as defined in 20 C.F.R. § 416.967(b), with additional exertional and nonexertional limitations. AR 581-88. The ALJ then found that Plaintiff is unable to perform any past relevant work. AR 588-89.

Relying at the final step on the vocational expert's testimony, the ALJ found Plaintiff can perform other work existing in significant numbers in the national economy. AR 589-90. Therefore, the ALJ concluded that Plaintiff has not been under a disability, for purposes of the Social Security Act, since the application date. AR 590.

## III.   Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1177 (10th Cir. 2020). Under such review, "common sense, not technical perfection, is [the Court's] guide." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

In reviewing the agency's factual findings, the Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (citation modified). Instead, the Court "looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation modified). Substantial evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Id.* at 103 (citation modified). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (citation modified). In addition to a lack of substantial evidence, "the agency's failure to apply the correct legal standards, or show [the Court] that it has done so, is also grounds for reversal." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

## IV.    Analysis

On January 5, 2021, Plaintiff had emergency surgery including a T4 to T11 laminectomy and T4 to L1 instrumented posterior spinal fusion. AR 408-10. Plaintiff alleges disability based primarily on back pain, lack of spinal mobility, and resulting functional limitations. AR 262. He claims disability began on January 4, 2021. AR 259.

### A.    Subjective symptom evaluation

#### 1.    Appeals Council's remand instructions

In its order of remand, the Appeals Council instructed the second ALJ to reconsider Plaintiff's RFC as well as "further evaluate [Plaintiff's] alleged symptoms, particularly with respect [to] his reported inability to stand, walk, or sit for extended periods, and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms." AR 647 (citation modified). In discussing the first ALJ's decision, the Appeals Council observed that Plaintiff "has repeatedly alleged in function reports, and testified extensively to, an inability to stand, walk, or sit for more than 20-25 minutes at a time," while the "only evidence that the claimant could stand and/or walk for 6 hours a day

4

came from the state agency medical consultants." AR 646 (citing AR 20; 43-45; 46-48; 273; 282; 300; 310; 318; 322; 325). The Appeals Council also discussed certain medical records the first ALJ relied on, but found such reliance unwarranted as the records did "not contradict the claimant's reported difficulty standing, walking, or sitting for extended periods." AR 646-47. The Appeals Council instructed that on remand "further consideration of the claimant's reported symptoms is required." AR 647. The second ALJ did not adequately follow those instructions.

The second ALJ found that Plaintiff had the RFC to "perform light work as defined in 20 CFR 416.967(b) except sit, stand and/or walk for 6 hours in an 8-hour workday; occasionally climb ramps and stairs, balance, stoop, kneel and crouch. No climbing ropes, ladders, scaffolding or unprotected heights." AR 581. However, as noted by the Appeals Council, Plaintiff has repeatedly alleged spinal symptoms that resulted in an inability to stand, walk, or sit for more than 20-25 minutes at a time. On remand, the record includes even more allegations of such symptoms and inabilities, including Plaintiff's hearing testimony as summarized by the ALJ:

> He was diagnosed with POTTS disease, that affects his back and is painful to where he can only stand, up and down for 10-15 minutes at a time. He had surgery in 2021 and had a nine-level fusion in the lumbar spine. He has had problems ever since then. He has constant pain in the back that goes down into both legs. He has pain and numbness in both legs. He can bend about 20 degrees. He uses a grabber to pick things up. His legs have gone out on him, and he has to use a cane when he gets out of bed and when he walks. It is worse now than at the previous hearing. He uses the cane about 50 percent of the time. His legs just get really weak, and it makes him walk "kind of funny." He feels like he is going to fall over. He gets about 2 hours of sleep per night, often getting out of bed every 10-15 minutes. He can walk about half a block.

AR 582-83; *see also* Plaintiff's testimony at June 18, 2024, hearing, AR 603 ("I get pain down my left leg and it's affecting my knee. I can't stand for more than—I'm up and down 10 or 15 minutes at a time."); 604 (he has constant pain in his low back with pain and numbness that goes down his legs); 605 ("Well, if I'm up for too long or if I walk too far, my legs will go out on me."); 605 (his symptoms and limitations are worse than at the previous hearing); 606-07 (he can sit for about 10-15 minutes before needing to stand up; he can stand for about 10-15 minutes before needing to sit or lie down; he needs to lie down for about 15 minutes before he can sit or stand again); 607 (he can walk about half a block before needing a break and must change positions continually throughout the day).

### 2.    Standards for evaluating symptoms

Under Social Security Ruling 16-3p, an ALJ is directed to determine the consistency of a claimant's statements regarding the intensity, persistence, and limiting effects of the claimant's symptoms as compared to other evidence in the record. SSR 16-3p, 2017 WL 5180304, at *4-10. In considering a claimant's complaints of subjective pain or other symptoms, an ALJ is required to consider all the relevant objective and subjective evidence and "decide whether he believes the claimant's assertions of severe pain." *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987). In doing so, the ALJ must consider and determine:

> (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged . . .; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

*Brownrigg v. Berryhill*, 688 F. App'x 542, 545 (10th Cir. 2017) (quoting *Keyes-Zachary*

*v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012)).  As part of this analysis, the ALJ

should consider the following factors:

    i.     Daily activities;

    ii.    The location, duration, frequency, and intensity of pain or other symptoms;

    iii.   Precipitating and aggravating factors;

    iv.   The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

    v.    Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

    vi.   Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

    vii.   Other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3)(i)-(vii); SSR 16-3p, 2017 WL 5180304, at *7-8; *accord*

*Brownrigg*, 688 F. App'x at 545-46 (noting that the factors to consider in the *Luna* analysis

are "similar" to those listed in Social Security Ruling 16-3p); *see also* AR 647 (Appeals

Council remand instructions that the ALJ should evaluate Plaintiff's alleged symptoms and

provide rational in accordance with 20 C.F.R. § 416.929).

    Here, the ALJ summarized Plaintiff's testimony regarding his symptoms and their

limiting effects, as well as his daily activities.  AR 582-83.  The ALJ then found that

Plaintiff's "statements about the intensity, persistence, and limiting effects of his

symptoms" were "inconsistent" with (1) Plaintiff's daily activities and (2) the objective

medical evidence.  AR 583.  The undersigned finds that substantial evidence does not support the ALJ's determinations regarding such inconsistencies.

### 3.    ALJ's consideration of daily activities

Plaintiff challenges the ALJ's reliance on his daily activities.  Pl.'s Br. at 24-25.  In discussing Plaintiff's subjective complaints, the ALJ found that Plaintiff "has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations."  AR 583.  The ALJ then cited the following testimony:

> The claimant testified that for daily activities, he gets up and gets breakfast, then goes and [lies] down for a while.  He gets up and walks around.  He is up and down all day long.  He lives with his parents.  His mom helps him by getting the groceries, doing all of the cooking, laundry, and does just about everything.  He can go out to eat with his mom and sometimes goes to the store with her.  He watches television during the day.

*Id*.; *see also* Plaintiff's testimony at June 18, 2024, hearing, AR 607 ("When I get up, I'll get breakfast and my mom usually helps me make breakfast and then I'll walk around for about ten minutes and then I'll go [lie] back down and watch TV for about 10/15 minutes and then get back up.  Up and down, up and down."); 608 (he doesn't do any activities including cleaning, shopping, or yard work).

It is unclear how such minimal daily activities, combined with the need to continually change positions throughout the day, are inconsistent with Plaintiff's statements regarding his symptoms and their limiting effects.  *See Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (noting that "in determining the credibility of pain testimony" the ALJ may consider "the nature of [claimant's] daily activities"); *Frey v.*

*Bowen*, 816 F.2d 508, 516 (10th Cir. 1987) ("Nor does the ALJ's citation of 'daily activities' indicate substantial evidence refuting [claimant's] complaint of disabling pain or its credibility."). Accordingly, the ALJ's determination that Plaintiff's daily activities are inconsistent with his statements regarding the intensity, persistence, and limiting effects of his symptoms is not supported by substantial evidence. *See Frey*, 816 F.2d at 517 ("In the present case, any reliance on [claimant's] 'daily activities' to undercut his allegation of pain is misplaced. [Claimant] testified that he cannot sit, stand, walk, or drive a car for more than a brief interval, that he does no yard work and only minor house chores, mostly to care for himself. This lifestyle does not contradict a claim of disabling pain.").

### 4.    ALJ's consideration of objective medical evidence

Plaintiff additionally challenges the ALJ's reliance on the medical evidence. Pl.'s Br. at 20-24. In considering the intensity, persistence, and limiting effect of Plaintiff's symptoms, the ALJ also reviewed the objective medical evidence and whether Plaintiff's statements regarding his symptoms were consistent with such evidence. AR 583-88; *see* SSR 16-3p, 2017 WL 5180304, at *5 ("We must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record."). However, as the Appeals Council found with respect to the first ALJ decision, the second ALJ also relied on medical evidence that is not inconsistent with Plaintiff's complaints of subjective symptoms and limitations. *See* AR 647 (finding the first ALJ relied on medical records that do not "contradict" Plaintiff's reported difficulty standing, walking, or sitting for extended periods).

9

### a.    Post-surgical follow-up appointments

In reviewing Plaintiff's medical records, the ALJ first considered records from Plaintiff's post-surgical follow-up appointments.  AR 584-86.  These included the March 2, 2021, clinic notes from Plaintiff's appointment to transition care to the Osler Clinic from OU Medical Center inpatient, at which time Plaintiff "ambulated with a slowed and unsteady gate and range of motion was decreased in the back."  AR 584 (citing AR 439).

Clinic notes from Plaintiff's first post-operative follow-up appointment with his surgeon at the OU Medical Center on March 31, 2021, indicate that Plaintiff "stated that overall he was walking normally" and "still had some coordination issues but was overall doing very well."  AR 585 (citing AR 454).  As Plaintiff explained at the hearing, he was unable to walk prior to his surgery.  AR 603-04.  This statement, then, is similar to Plaintiff's statement made nine months after surgery that he was "'doing well' overall."  AR 647 (quoting AR 21).  With respect to that statement, the Appeals Council noted Plaintiff had explained that he felt that way because, prior to surgery, he was unsure if he would be able to walk again.  AR 647 (citing AR 43-44).  Accordingly, the Appeals Council found the statement did not contradict Plaintiff's statements of symptoms and resulting limitations.  AR 647.  Likewise, Plaintiff's observation that he was walking normally at his first post-surgery follow-up does not contradict Plaintiff's reported difficulty standing, walking, or sitting.[3]

---

[3] The ALJ additionally noted a March 31, 2021, function report showing Plaintiff "was unable to return to work" as he "required further rehabilitation and physical therapy." AR 585 (citing AR 522).

The ALJ next considered Plaintiff's September 1, 2021, six-month follow-up with the OU Medical Center in which x-rays revealed "persistent erosive changes within the vertebral bodies." AR 585 (citing AR 551). Appointment notes indicate Plaintiff was "progressing well" and "able to return to regular activity as tolerated [but] was told to be mindful of excessive bending, twisting, squatting or weightlifting." AR 585 (citing AR 552). This treatment note indicates that, while Plaintiff was progressing well, his return to regular activity was to be limited by his ability to tolerate pain and symptoms. As such, to the extent the ALJ relied on this medical record to find an inconsistency between the objective medical record and Plaintiff's reported symptoms and limitations, the undersigned finds no inconsistency.

On March 16, 2022, Plaintiff reported for a surgical follow-up and reported "trouble sitting, standing, picking up." AR 548. Plaintiff asserted a pain level of 4 out of 10, and that he experienced the pain "constantly (all the time)." AR 548. With respect to this appointment, the ALJ discussed only Plaintiff's x-rays. AR 586 (citing AR 544).

### b.    Physical therapy appointments

From April 22, 2022, through May 24, 2022, Plaintiff participated in physical therapy for "decreased strength, flexibility, and range of motion." AR 586 (citing AR 568). Plaintiff reported limitations in independent activities of daily living, work, and sports, plus a desire to "increase his mobility and reduce pain as well as increase stan[]ding endurance." AR 558, 568, 572.

As to the April 22, 2022, physical therapy record, the ALJ discussed that Plaintiff was noted as "exhibiting good bilateral equal trunk rotation on examination." AR 586

11

(citing AR 568). However, this is incorrect as the notations regarding "Range of Motion Assessment Label" for "Bilateral Trunk" indicate only that the extremities were not within functional parameters as Plaintiff "has reduced thora[c]ic mobility that is typical for s/p fusion." AR 569. The ALJ also stated that Plaintiff reported he was experiencing pain at an intensity level of 4 out of 10. AR 586 (citing AR 568). However, this is also incorrect as Plaintiff reported pain as a 5 out of 10. AR 568-69. The undersigned therefore finds the ALJ's discussion of the April 22, 2022, physical therapy notes to be inaccurate. As such, to the extent the ALJ relied on this medical record to find an inconsistency between the objective medical record and Plaintiff's reported symptoms and limitations, the undersigned finds such reliance is unsupported by substantial evidence. *See Lax v. Astrue*, 489 F.3d 1080, 1089 (10th Cir. 2007) (finding an ALJ's determination unsupported by substantial evidence when such determination was based on an inaccurate description of the medical record); *see also Sitsler v. Astrue*, 410 F. App'x 112, 118 (10th Cir. 2011) (reversing and remanding when an ALJ's analysis of plaintiff's symptoms was "flawed" due in part to "his reliance on mischaracterizations of the evidence").

With respect to the May 17, 2022, physical therapy record, the ALJ stated that Plaintiff "had improvement in symptom tolerance and management, as well as decreased pain associated with movement to return to work without restrictions or limitations." AR 586 (citing AR 560). The ALJ's discussion of the May 17, 2022, physical therapy notes is also inaccurate. The ALJ's description is taken from the "Long Term Goals" section of the treatment note and does not reflect Plaintiff's statements or the physical therapist's assessment or clinical impressions. *Compare* AR 586, *with* AR 560-61. Again,

to the extent the ALJ relied on this medical record to find an inconsistency between the objective medical record and Plaintiff's reported symptoms and limitations, the undersigned finds such reliance is unsupported by substantial evidence. *See Lax*, 489 F.3d at 1089; *Sitsler*, 410 F. App'x at 118.

Further, it appears the ALJ mistakenly attributed records from the May 17, 2022, appointment to the wrong date in stating: "A week later [than May 24, 2022], [Plaintiff's] pain symptoms were noted to have lowered down to a three out of ten and he was noted as reporting that he had regained strength and was noted as developing greater flexibility." *Compare* AR 586 (citing AR 561), *with* AR 561. At the May 17th appointment, Plaintiff "reported he feels he is regaining his strength and is becoming more flexible with his extremities and gentle rotation of trunk." AR 561. Plaintiff also reported his pain intensity as 4 and 5 on a 0-to-10 pain scale, but "stated at his best[,] his pain get[s] to a 3 of 10 when relaxed." AR 560. While the ALJ's statement that Plaintiff's "pain symptoms were noted to have lowered down to a three out of ten" is accurate, it ignores the notations that Plaintiff stated this happens only "at best" when he is "relaxed" and his pain intensity is generally a 5 or 4. AR 560. As such, to the extent the ALJ relied on this medical record to find an inconsistency between the objective medical record and Plaintiff's reported symptoms and limitations, the undersigned finds such reliance is unsupported by substantial evidence. *See Noreja*, 952 F.3d at 1178 ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." (citation modified)).

Finally, with respect to the May 24, 2022, physical therapy record, the ALJ stated that Plaintiff "reported that he was moving better and was working on home exercise

program to regain good functional movement within his limits. He stated the exercises had helped and he was slowly having less pain. There was increased perceived functional level with reduction of pain. His providers' goal was to lower these pain symptoms to a two out of ten." AR 586 (citing AR 558). In addition, Plaintiff "was noted as attending physical therapy and lifting thirty-five-pound weights from the floor with two reps and was noted as doing so with good technique and with pain symptoms no greater than two to three in intensity out of ten: with ten being the most intense pain imaginable." AR 586 (citing AR 559) (citation modified).[4]

The ALJ's discussion of this medical record is incomplete. The undersigned's review finds that Plaintiff was discharged from physical therapy having made progress on his goals of pain management such that he obtained "reduced but not abolished pain in back." AR 559. While Plaintiff met some long term goals, he notably did not meet the referenced long term goal of "rat[ing] pain as no greater than 2/10, 75% of the time to indicate improvement in [symptom] tolerance and management and decrease pain associated with movement to return to work and [prior level of functioning] without restrictions or limitations." AR 559. Plaintiff did state that the exercises had helped and "he is slowly having less pain. However[,] he reports the pain rarely gets below 3 of 10, but has improved from being 5-6 of 10 regularly." AR 558. The medical record

---

[4] Plaintiff was discharged from physical therapy on May 24, 2022. Accordingly, the ALJ's reference to a medical record dated May 25, 2022, appears to be a scrivener's error in which the intended date was May 24, 2022. *Compare* AR 586, *with* AR 558-59.

additionally notes that Plaintiff "reports pain at best is usually 3 of 10[,] which is significant in that it had for some time been 5 of 10 at best."  AR 559.

According to the May 24, 2022, physical therapy record, Plaintiff also did not meet the short term goal of self-reporting improvement on the Oswestry Disability Score Index to achieve a score of less than or equal to 5/50, which would indicate a 10% disability related to Plaintiff's back and "improvement with lumbar [symptoms] including pain and decreased tolerance to functional mobility and [activities of daily living] to return to [prior level of functioning] and normal home and community participation."  AR 559.  Plaintiff self-reported a score of 17/50, down from an initial 27/50, which indicates "increased perceived functional level with reduction of pain."  AR 558.

Thus, Plaintiff showed improvement.  However, such improvement did not rise to the level the ALJ intimated with his statement that, while doing two reps of lifting weights, Plaintiff was noted "with pain symptoms no greater than two to three in intensity out of ten: with ten being the most intense pain imaginable."  AR 586.  Instead, it appears the source of that statement was the notation that Plaintiff did the reps "without increased pain."  AR 559.  Given that Plaintiff reported his pain as "at best" 3 out of 10, with no explanation of the length or frequency of this "best" pain level, the record does not support the ALJ's statement that, when lifting a weight during therapy, Plaintiff's pain was "no greater than two or three."  *See also* AR 560 ("[Plaintiff] stated at best his pain get[s] to a 3 of 10 when relaxed.").  As such, nothing in these physical therapy notes demonstrates inconsistency with Plaintiff's complaints of subjective symptoms and limitations.  Accordingly, to the extent the ALJ relied on this medical record to find an inconsistency

between the objective medical evidence and Plaintiff's reported symptoms and limitations, the undersigned finds such reliance is unsupported by substantial evidence. *See Noreja*, 952 F.3d at 1178 ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." (citation modified)).

### c.    Additional appointments

#### i.    JT Health Clinic

Finally, the ALJ discussed various additional medical records. On October 7, 2022, Plaintiff presented to establish care with JT Health Clinic, complaining of pain in his elbow. AR 586 (citing AR 871). Plaintiff appears to have reported for treatment approximately monthly from October of 2022 through July of 2023 to JT Health Clinic. AR 793-876. After his initial visit on October 7, 2022, through February 28, 2023, Plaintiff was treated primarily for testicular hypofunction. AR 825-76. Beginning with his March 27, 2023, appointment and continuing through his July 26, 2023, appointment, however, Plaintiff consistently complained of low back pain. AR 793-824.

With respect to Plaintiff's subjective complaints of back-related pain, the ALJ noted that, at his April 27, 2023, appointment with JT Health Clinic, Plaintiff "wanted to talk about his back pain as it was disturbing his sleep cycle so much that it concerned him for constant fatigue syndrome." AR 587 (citing AR 812). Plaintiff "said pain in the back was chronic and moderate in intensity, secondary to multiple level thoracic fusion status post infection and sepsis. He was stable and had been for a while but still struggles daily with rest, chronic pain and insomnia issues due to sleep pattern disturbances." AR 587 (citing AR 813). On May 23, 2023, Plaintiff also reported back pain, with the ALJ noting he

"stated that his back pain was still an[] evening issue with being able to rest without having to toss and readjust." AR 587 (citing AR 801); AR 799. At that appointment, Plaintiff told his treatment provider that he got very little sleep due to discomfort, as he had to change positions or get up and walk around every 15-20 minutes. AR 799. As noted by the ALJ, Plaintiff also reported back pain on June 19, 2023. AR 587 (citing AR 797). Additionally, though not mentioned by the ALJ, Plaintiff reported back pain on March 27, 2023, and July 26, 2023. AR 819, 793. Given Plaintiff's consistent complaints of back pain—and the ALJ's discussion of such complaints—the undersigned cannot discern how these medical records could provide substantial evidence for the ALJ's determination that there were inconsistencies between Plaintiff's complaints of subjective pain and limitations and the objective medical evidence.

### ii.    Xpress Wellness Urgent Care

On March 22, 2024, Plaintiff presented to Xpress Wellness Urgent Care for a refill on his blood pressure medication. AR 886-88. The ALJ discussed that the treatment record indicates all aspects of Plaintiff's physical exam were normal, including normal gait and posture, as well as no tenderness, deformity or lesion bilaterally in the upper or lower extremities. AR 587 (citing AR 886-87). The only diagnosis at this appointment related to Plaintiff's hypertension; it does not appear that Plaintiff sought treatment or was assessed for back pain. AR 886-88.

On May 17, 2024, Plaintiff presented to Xpress Wellness Urgent Care for complaints related to his blood pressure and listed musculoskeletal aches and pains among his recent symptoms. AR 883. The ALJ observed that Plaintiff noted he had "chronic

pain" as well as "chronic insomnia due to the inability to get pain relief to sleep more than 20-minute increments throughout the night." AR 587-88 (citing AR 883). The ALJ discussed that the treatment record indicates that Plaintiff's physical exam showed a reduced range of motion of the back as well as weakness of lower extremities. AR 588 (citing AR 884). The ALJ noted that, in addition to a diagnosis related to Plaintiff's hypertension, this medical record also included diagnoses of "pain in thoracic spine" and "insomnia due to medical condition." AR 588 (citing AR 884). Additionally, though not included in the ALJ's discussion, this medical record concluded with the following instructions by the treatment provider regarding Plaintiff's back pain:

- Continue chronic back pain ongoing self therapy and follow up with spine physician as directed. Including ongoing restrictions of activity given after extensive surgical procedures.

- Restrictions of lifting no more than 20 [pounds] at home and no repetitive bending or twisting motions.

- Rest but change positions while resting every 30-60 minutes.

AR 885.

Because the treatment provider gave Plaintiff instructions regarding management of his back pain—including instructions to rest and frequently change positions, which would limit Plaintiff's ability to stand, walk, or sit for long periods—the ALJ's failure to discuss the instructions was error. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (holding that an ALJ must discuss "significantly probative evidence" that he rejects). Additionally, because the medical record reflects Plaintiff's continued complaints of back pain, as well as reduced range of motion of the back and weakness of lower extremities, it

supports Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms. As such, to the extent the ALJ relied on this medical record to find an inconsistency between the objective medical record and Plaintiff's reported symptoms and limitations, the undersigned finds such reliance is unsupported by substantial evidence. *See Noreja*, 952 F.3d at 1178 ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." (citation modified))

There are no additional medical records in the administrative record.

### d.    Conclusion

The undersigned is mindful that determinations regarding a claimant's statements of subjective symptoms "are peculiarly the province of the finder of fact" and a court may not "upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (citation modified). However, here the undersigned finds (1) a lack of inconsistency between the various medical records discussed by the ALJ and Plaintiff's complaints of subjective pain and associated limitations and (2) inaccuracies in the ALJ's descriptions of some of those records. Accordingly, the medical records the ALJ relied on to reach his determination of inconsistency do not provide substantial evidence for that determination. And "a decision not supported by substantial evidence must be reversed." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (citation modified).

Additionally, the ALJ's analysis supporting his credibility determination was lacking. Though the ALJ provided a detailed summary of Plaintiff's medical records, AR 583-88, he failed to provide adequate explanation for his determinations that "there are

inconsistencies regarding [Plaintiff's] limitations and the objective medical evidence," AR 583, or that "the evidence as a whole simply does not support the extreme allegations as to functional limitations," AR 588. Instead, he "simply recited evidence from the record and did not provide any insight into how that evidence had impacted [his] determination of Plaintiff's allegations." *Copelin v. Saul*, No. CIV-18-1157-STE, 2019 WL 3082472, at *6 (W.D. Okla. July 15, 2019). An ALJ's findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler*, 68 F.3d at 391 (citation modified); *see also* SSR 16-3p, 2017 WL 5180304, at *10 ("The determination or decision [regarding evaluation of symptoms] must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."). Conclusory statements are insufficient to support the ALJ's determination. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 546 (10th Cir. 2017) ("Because the ALJ did not . . . sufficiently articulate his reasoning, [the court] cannot conduct a meaningful review of the pain assessment."); *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (explaining that the ALJ is required to closely and affirmatively link findings regarding a claimant's statements to substantial evidence in the record and to "articulate specific reasons" for such findings).

Because the ALJ failed to provide adequate explanation as to how he arrived at his determination of inconsistency, "remand of this matter is appropriate for an ALJ to make express findings regarding Plaintiff's subjective allegations in accordance with his duties

under SSR 16-3p." *Maurice D. H. v. O'Malley*, No. 22-CV-530-MTS, 2024 WL 51022, at *5 (N.D. Okla. Jan. 4, 2024); *accord, e.g., Sanders v. King*, No. CIV-24-508-STE, 2025 WL 365650, at *4 (W.D. Okla. Jan. 31, 2025) (reversing and remanding when the ALJ made conclusory findings under SSR 16-3p); *Hager v. Kijakazi*, No. CIV-23-18-AMG, 2023 WL 6849065, at *4 (W.D. Okla. Oct. 17, 2023) (same); *Copelin*, 2019 WL 3082472, at *6 (same).

### 5.    Conclusion

The undersigned concludes that substantial evidence does not support the ALJ's determinations that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with (1) Plaintiff's daily activities and (2) the objective medical evidence.  As such, the undersigned finds the ALJ did not adequately follow the instructions of the Appeals Council on remand to "further evaluate [Plaintiff's] alleged symptoms, particularly with respect [to] his reported inability to stand, walk, or sit for extended periods, and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms."  AR 647.  "When the Appeals Council remands a case with instructions, those instructions become legal requirements with which the ALJ is bound to comply."  *Noreja*, 952 F.3d at 1179 (citation modified); *see also* 20 C.F.R. § 416.1477(b) ("The administrative law judge shall take any action that is ordered by the Appeals Council.").  A federal court should consider whether the ALJ complied with a remand order from the Council, and an ALJ's failure to comply can be reversible error. *Noreja*, 952 F.3d at 1178; *Hale v. Astrue*, No. CIV-10-1377-L, 2012 WL 3542201, at *2- 3, *7 (W.D. Okla. July 24, 2012) (finding that the ALJ erred by, among other things,

"failing to comply with instructions by the Appeals Council" and that the errors "require[d] reversal") (R&R), *adopted*, 2012 WL 3542198 (W.D. Okla. Aug. 16, 2012); *see also Lofthouse v. Kijakazi*, No. 2:21-CV-00178-CMR, 2023 WL 4409217, at *4 (D. Utah July 7, 2023) (reversing when, inter alia, it was "unclear" if the ALJ followed the Appeals Council's remand instructions). Here, reversal is required.

### B.    Plaintiff's Remaining Claims of Error

Because the above issue warrants remand, the undersigned does not address Plaintiff's other claims of error. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

### V.    Recommendation and Notice of Right to Object

For the foregoing reasons, the undersigned recommends the Court **REVERSE** and **REMAND** the Commissioner's decision for further administrative proceedings.

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of Court not later than August 12, 2025. *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 29th day of July, 2025.

CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE